[Civ. No. 5180. Second Appellate District, Division Two.—December 27, 1927.]

LILLIE T. WEBB, Respondent, v. A. M. JONES et al., Defendants; WALTER J. LEWIS et al., Appellants.

William C. Jensen for Appellants.

Joseph Musgrove, J. Karl Lobdell and Fred O. McGirr for Respondent.

HAZLETT, J., *pro tem.*—Plaintiff, the respondent herein, brought this action in unlawful detainer to recover possession of demised premises consisting of an apartment house property; for damages on account of unpaid rents and unlawful detention, and for attorney's fees. Plaintiff's predecessors in interest, by written lease, demised to defendant Maude Bryant Johnson for eight years beginning August 1, 1920, at the rental of $450 per month during the first three years and $500 per month during the remainder of the term, payable monthly in advance, and the lessee agreed therein as follows: That she should keep the premises and appurtenances in the same good order and condition as when delivered to her, reasonable use excepted; that no alterations or changes in the premises should be made without the written consent of the lessors; that she should keep the premises as fully and well furnished as at the execution of the lease, and should make all necessary restorations and replacements to keep them so furnished. The lease contains the following provisions regarding assignment and for subletting: "Permission is granted to the original lessee to assign and transfer this lease to an individual person or persons, providing such assignee or assignees shall assume and agree to perform each and all of the covenants herein contained to be performed by the lessee. Save as aforesaid, it is agreed that this lease shall not be assigned or transferred except by and with the written consent of the lessors. The said premises shall not be sublet or underlet except the customary underletting of apartments in conducting an apartment house, . . . "

The lease also provides that should any of the rent be unpaid or should the lessee be in default in any other covenant or condition of the lease, the lessors might, at their option, and upon ten days' written notice to the lessee, re-enter, take possession and remove all persons from the premises, and upon so electing they might at their option terminate the lease and recover from the lessee all damages caused by any such breach, including costs and reasonable attorney's fees incurred by the lessors; also that the lessors should have a first lien upon all the furniture and furnishings to secure payment of the rents and performance of the lessees' other agreements. The lessee executed her chattel mortgage in conformity with the foregoing.

Defendant Johnson sold the furniture and furnishings and assigned the lease to appellants and put appellants into possession, and about August 1, 1922, appellants procured the written consent of the lessors for an assignment of the lease by appellants to defendant Tillie J. Wentling. About August 10, 1922, appellants entered into a conditional sales contract denominated "Lease Contract," whereby they agreed to sell the lease and the "furniture and appointments" of the apartment house for $40,000 to defendant Wentling, $16,000 of which sum was then paid and the balance Wentling agreed to pay in installments of $300 per month, appellants reserving the title to the lease and furniture and appointments until full payment, and Wentling assuming all the lessee's obligations under the lease. It was further stipulated therein that the contract should be subject to all the terms of the lease and that in the event of any default on the part of Wentling, under the contract, all payments thereunder which remained unpaid should become immediately payable, and upon her failure to pay appellants should have the right to retake possession. Thereafter appellants put Wentling into possession of the premises and contents under the contract.

On January 1, 1923, lessors conveyed the premises and assigned the lease to plaintiff. About January 15, 1924, Wentling assigned the conditional sales contract to defendant A. M. Jones, who assumed all of the obligations thereof and Jones went into possession of the premises and contents under the contract. No consent was obtained from

plaintiff to any assignment of the lease to Jones or to any subletting to Wentling or Jones or to the possession by Jones. Jones paid the rent for February, 1924, and tendered to plaintiff the rents for March to December, inclusive, in 1924, at $500 per month, which tenders were refused by plaintiff, but Jones failed to keep his tenders good by depositing the amount and serving the notice as provided in section 1500 of the Civil Code, and those rents and all rents subsequently falling due remained unpaid. Plaintiff or her predecessors in interest had no knowledge of the execution or existence of the conditional sales contract or that Wentling was in possession under it, or that it had been assigned to Jones, or of the possession by Jones under that contract until after this action was commenced, but plaintiff was informed by Jones that he was in charge of the premises as manager for Wentling. The foregoing facts are not in dispute, and the following are established by the weight of evidence: During the term of the lease defendants made or permitted to exist material alterations in the demised premises and omissions from the contents thereof without replacements, without the consent of plaintiff or her predecessors in interest.

On or about May 1, 1924, plaintiff served a written demand upon each of the defendants, including appellants Wentling and Jones, reciting that appellants and Wentling, without the consent of lessors or plaintiff, "assigned, transferred and/or sublet said lease or premises to said A. M. Jones," failed to keep the premises furnished as required in the lease and made said alterations, and that the rent for the months of March and April, 1924, has not been paid; and that, by reason thereof, plaintiff elected to terminate the lease and to re-enter the premises at the expiration of ten days and to recover all damages caused by said breaches, including reasonable attorney's fees and costs; and that defendants are required to surrender possession upon the expiration of said ten days unless said breaches are remedied. The rents were not paid nor were any of the other matters complained of remedied, and on or about June 19, 1924, plaintiff served upon each of the defendants a three-day notice and demand referring to the ten days' demand, reciting the asserted defaults and that plaintiff had elected to and did terminate the lease and to re-enter the premises; that further de-

faults had been made in that the rentals for the months of May and June, 1924, were not paid, and that defendants were required within three days after the service of this notice, to remedy the defaults or to deliver up possession of the premises or plaintiff will institute proceedings to recover the same, together with damages for detention thereof. This action was commenced on June 25, 1924, and the trial court found the foregoing facts, and the following:

That appellants sublet the premises to Wentling and her husband and that Wentling and her husband sublet to Jones, each of whom assumed the obligations of the lease binding on the lessee; that neither of the sublettings was known or consented to by plaintiff or the lessors and that each subletting was a violation of the terms of the lease; that the unpaid rents of $500 per month from March 1, 1924, to March 2, 1925, aggregated $6,000, and the interest accrued thereon $192.70 and that $1,000 is a reasonable attorney's fee to be allowed plaintiff. The court concluded upon the facts that plaintiff was entitled to have the lease terminated, to restitution of the premises and to recover from the defendants "for rental for said premises" $6,000, and $192.70 interest thereon. Judgment was entered for such termination and restitution and for $6,192.70 against all of the defendants, but the judgment does not recite whether the sum or any part of it was for rent or damages.

The amended complaint alleged that the rents subsequent to March 1, 1924, were unpaid; the service of the demands for the rents at $500 per month and that plaintiff was damaged $3,000 by unlawful possession by defendants, and prayed for cancellation of the lease, possession and damages for unlawful possession, for rents and attorney's fees.

(1) The complaint, findings, conclusions, and judgment indicate that the money recovery in the judgment covers only the unpaid rents that accrued prior to the notice of forfeiture and the damages suffered by the unlawful detention after the forfeiture as found and determined by the court, and attorney's fees. (*Pfitzer* v. *Candeias,* 53 Cal. App. 737 [200 Pac. 839].)

Appellants made a number of assignments of error. In order to determine the rights of the parties consideration is given to the following points presented by them:

The lease was assigned, not sublet to Wentling and Jones.

The covenant not to assign or sublet was not violated.

The agreement to pay rent was not broken.

The covenant not to alter the premises was not broken.

The covenants to keep the premises in good condition and repair and fully furnished were performed.

The ten-day termination notice and the three-day notice were insufficient as a matter of law.

Forfeiture was waived.

(2) Although the lessors gave their written consent to an assignment of the lease by appellants to Wentling, appellants executed to Wentling only the conditional sales contract of the lease and contents of the apartment house, and appellants reserved the right of re-entry upon any breach of the terms of the contract. Jones held as assignee of the rights of Wentling under the conditional sales contract.

The first question to be determined in this connection is whether Wentling and Jones were assignees of the lease or sublessees.

In relation to assignments by lessees under a lease containing a covenant against assignment without consent such as found in the lease under consideration, our courts have held that the covenant is personal, binding only upon the lessee and does not run with the land. Such consent once given by a lessor discharges the covenant and subsequent assignments may be made without such consent unless there is appropriate language in the lease making the covenant binding upon the subsequent assignees. (*Miller* v. *Reidy*, 85 Cal. App. 757 [260 Pac. 358], and cases cited therein. See, also, *Erickson* v. *Rhee*, 181 Cal. 562 [185 Pac. 847]; *Rothrock* v. *Sanborn*, 178 Cal. 693 [174 Pac. 314].)

Assuming that Wentling and Jones were assignees as contended by appellants, the assignment to Wentling by consent of appellants discharged the covenant contained in the lease against assignment without consent of the lessors, and no consent to the subsequent assignment to Jones was necessary. Therefore, as the courts have uniformly held that assignees of lessees are liable to the lessors for rents accruing during the time the assignees are in possession of demised premises (*Baker* v. *J. Maier & Zobelein Brewery*, 140 Cal. 530 [74 Pac.

22]; *Realty & Rebuilding Co.* v. *Rea,* 184 Cal. 565, at 569 [194 Pac. 1024]; *Jordan* v. *Scott,* 38 Cal. App. 739 [177 Pac. 504]), plaintiff was within her rights in pursuing Wentling and Jones for the unpaid rents and for damages for unlawful detention.

On the other hand, plaintiff contends that Wentling and Jones were sublessees. If they were, we are faced by a different situation, unless by her acts in this action plaintiff has waived her right to deny that they were assignees or that they acquired some rights in the demised premises which she recognized.

The rules of law governing such a situation are clearly defined in *Barkhaus* v. *Producers Fruit Co.,* 192 Cal. 200, at pages 205, 206 [219 Pac. 435], as follows: "It is elementary that a sublease, in order to operate as an assignment, must transfer to the sublessee the entire term of the original lease, in the whole or some part of the demised premises, . . . The term thus referred to is not measured alone by the length of time for which it runs, but is measured as well by the extent of the premises which it covers and the nature and extent of the estate or interest therein which it embodies. The term . . . may be regarded as having three dimensions analogous to the special dimensions of length, breadth, and thickness. *The term* to be transferred to his assignee, by such a tenant . . . *must include all of the estate and interest in said premises possessed by the lessee under the original lease.* To constitute an assignment of a leasehold interest the assignee must take precisely the same estate in the whole or in a part of the leased premises which his assignor had therein. . . . For in the language of Blackstone, . . . 'if by the terms of the conveyance, be it in the form of a lease or an assignment, *new conditions with the right of entry, or new causes of forfeiture are created, then the tenant holds by different tenure,* and a new leasehold interest arises, which cannot be treated as an assignment or a continuation to him of the original term' (*Dunlap* v. *Bullard,* 131 Mass. 161, 162. See, also, *United States* v. *Hickey,* 17 Wall. [84 U. S.] 9 [21 L. Ed. 559, see, also, Rose's Notes]; *Davis* v. *Vidal,* 105 Tex. 444 [42 L. R. A. (N. S.) 1084, 151 S. W. 290]; 1 Taylor on Landlord and Tenant, 9th ed., sec. 16)." (Italics ours.)

As the whole estate held by appellants under the lease was not assigned to Wentling or Jones, and as in the conditional sales contract new causes of forfeiture were created and appellants expressly reserved the right to re-enter the demised premises and terminate the contract upon any breach thereof by Wentling, it appears that neither Wentling nor Jones held as assignee of the lease, but that each held only as sublessee. The lease prohibited any such subleasing and provided that the lessors might at their election re-enter the demised premises and terminate the lease upon any such subleasing.

(3) In determining the rights of the parties resulting from subleasing, full consideration must be given to the theory on which the case was tried in the lower court. Plaintiff is bound here by the theory she followed there. (*Lugiani* v. *Landau Economic Syphon Co.*, 38 Cal. App. 146 [175 Pac. 648] ; *Lamberson* v. *Bashore*, 178 Cal. 321 [173 Pac. 401] ; 2 Cal. Jur. 237 and 801.) Plaintiff pursued Wentling and Jones in this action and, after she was advised that they were sublessees only, she took judgment against them as well as against appellants for the unpaid rents which accrued prior to the forfeiture and for the damages she suffered thereafter by the unlawful detention as found by the court.

There is no privity of contract or estate between an original lessor and a subtenant and the subtenant is not liable to the lessor on the covenants of the lease nor on the covenants of the sublease (Tiffany on Landlord and Tenant, sec. 162; *Bekins* v. *Smith*, 37 Cal. App. 222 [174 Pac. 96] ; *Richmond* v. *Superior Court*, 9 Cal. App. 62 [98 Pac. 57] ; *Francis* v. *West Virginia Oil Co.*, 174 Cal. 168 [162 Pac. 394] ; *Steinback* v. *Krone*, 36 Cal. 303). However, it was held by the supreme court of Arkansas that where a defendant agreed to take the place of the tenant under a lease, whether as assignee or sublessee, and pay the rent to the lessor, the agreement inured to the benefit of the lessor and the lessor could sue the defendant for the rent. (*Foucar* v. *Holberg*, 58 Ark. 59 [107 S. W. 172] ; but see *Ericksen* v. *Rhee*, 181 Cal. 562, at 566 [185 Pac. 847] ; 18 Cal. Jur., p. 41, sec. 364, and cases cited.)

In the conditional sales contract Wentling assumed "all and every obligation of sellers" (appellants) under the lease, and in the assignment of that contract Jones assumed and agreed to "fulfill all the terms and conditions as set out in said contract." As sublessees, Wentling and Jones were proper parties defendant in this action in order that whatever claims they had to the demised premises might be determined (sec. 1164, Code Civ. Proc.; *Pardee* v. *Gray,* 66 Cal. 524 [6 Pac. 389]), but this action could have proceeded without them (*Tujague* v. *Superior Court,* 69 Cal. App. 35 [230 Pac. 198]).

The theory upon which this case was tried and judgment taken was that, by reason of the contractual relations existing between appellants and Wentling and Jones, both Wentling and Jones were liable for said rents and damages. Wentling and Jones did not appeal.

It was held in *Randol* v. *Tatum,* 98 Cal. 390 [33 Pac. 433], which was an action for rent and against sureties on a bond to secure the rent, that forfeiture of a lease for breach of a condition against assignment without consent of the lessor was waived by acceptance of rent, *eo nomine,* from anyone after knowledge by the lessor of the assignment. (See, also, *Goodwin* v. *Grosse,* 56 Cal. App. 615 [206 Pac. 138].)

■ The conclusion necessarily follows that plaintiff, by her acts, waived forfeiture of the lease because of the subleasing. This conclusion, however, is not decisive of this appeal. The matters hereinafter discussed determine the rights of the parties herein involved.

■ (4) Jones tendered the rents for the months of March to December, 1922, at $500 per month by means of checks mailed to plaintiff, which were refused by her, but he did not attempt to extinguish the obligation by depositing the amount thereof to the credit of plaintiff and by giving the notice of the deposits as provided in section 1500 of the Civil Code. Therefore the debt was not extinguished by the tenders. (*Segno* v. *Segno,* 175 Cal. 743 [167 Pac. 285]; 24 Cal. Jur. 526.) Continuous readiness to pay after the tender was not shown. In fact, Jones testified that after he made the tenders he used the money for other purposes and was not able to pay the back rents on or after June 14, 1924. This action was commenced on June 25,

1924. Therefore plaintiff had a just cause of action in unlawful detainer because of the nonpayment of the rent. (*Occidental etc. Co.* v. *Gantner & Mattern*, 7 Cal. App. 727 [95 Pac. 1042].)

In the ordinary action of unlawful detainer for nonpayment of rent, it is proper for the court to allow seven per cent interest on the installments of rent. (*Chambers* v. *Security Commercial & Savings Bank,* 46 Cal. App. 32 [188 Pac. 818].) The lower court erred in this case, however, in allowing interest upon the amount of rents found unpaid. The tenders and their refusals, although the tenders were not keep good, ''stop the running of interest on the obligation.'' (Sec. 1504, Civ. Code; *Lockhart* v. *McDougall Co.,* 190 Cal. 308, at 312 [212 Pac. 1], and cases therein cited.)

(5) The court found, and the findings are supported by substantial evidence, that the defendants were guilty of other violations of the covenants or conditions of the lease consisting of material alterations in the demised premises and material omissions from the contents thereof without replacements, and that the consent or approval of plaintiff or her predecessors in interest therefor was not obtained. As the judgment appealed from was based substantially upon the defaults in payment of rents and such defaults are sufficient to sustain the judgment, no further consideration will be given to the question whether the violations were in themselves sufficient to base this action upon.

(6) Appellants contend that the termination notice and the notice to quit were fatally defective, in that neither notice stated the amount of rents unpaid, as provided in section 1161 of the Code of Civil Procedure, and they also cite *Hill Co.* v. *Pinque,* 179 Cal. 759 [3 A. L. R. 669, 178 Pac. 952]; Id., 56 Cal. App. 245 [204 Pac. 1097]. This point was not raised by appellants in the lower court and no objection as to the sufficiency of the evidence in relation to the notices was made there by them. Each of the notices named the months for which the rents were unpaid, but failed to state the amount of the rents. The lease required the payment of $500 per month rent in each of those months. The amended complaint alleged that the termination notice served on the defendants named the months and *stated the amount of rent unpaid,* and that the notice

to quit also named the months and likewise *stated the amount of rent unpaid.* A copy of each of the notices was attached to the amended complaint and was referred to and made a part of it. Appellants did not demur to this pleading. The answer of appellants *admits* those allegations by failure to deny them. "Every material allegation of the complaint, not controverted by the answer, must, for the purposes of the action be taken as true; . . . " (Sec. 462, Code Civ. Proc.; *Welch* v. *Alcott,* 185 Cal. 731, at 754 [198 Pac. 626], and cases cited.)

In the case of *Mendocino County* v. *Morris,* 32 Cal. 145, the complaint alleged that the official bond sued on was signed by all the defendants. The name of the principal did not appear on the copy of the bond attached to the complaint. Demurrer was interposed to the complaint, but the demurrer did not raise the question of uncertainty or ambiguity. "The direct averment of the execution of the bond in the body of the complaint must prevail, as against the omission of the signature in the copy. . . . The most that can be said is, that the complaint is ambiguous in this respect. . . . The objection is raised for the first time in this court."

In the case of *Blasingame* v. *Home Ins. Co.,* 75 Cal. 633, at 637 [17 Pac. 925], brought on a policy of fire insurance, it appeared that the complaint alleged that by the policy, a copy of which was attached to and made a part of the complaint, the loss, if any, was made payable to plaintiff, but the attached copy contained nothing to show that the loss was made payable to plaintiff. It was held that the complaint was good as against a general demurrer.

It was held in *Silvers* v. *Grossman,* 183 Cal. 696, at 702 [192 Pac. 534] that such a defect is merely one of uncertainty or ambiguity, and can be reached only by special demurrer.

It was held in *Panter* v. *National Surety Co.,* 36 Cal. App. 44, at 46 and 47 [171 Pac. 803], that "Whatever is an essential element of a cause of action must be presented by a distinct averment and cannot be left to an inference to be drawn from the construction of a document attached to the complaint. (Citing cases.) . . . The converse of this rule must be that, in the absence of a special demurrer for

uncertainty, direct and essential allegations in a complaint will not be modified, controlled, or defeated by the recitals of an instrument attached to the complaint." (Citing cases.) To the same effect, see *Kennard* v. *Binney,* 62 Cal. App. 732 [217 Pac. 808], and *Linz* v. *McIver & Becker,* 29 Cal. App. 470 [156 Pac. 1000]; *Estate of Cook,* 137 Cal. 184 [69 Pac. 968].

It was held in *Treanor* v. *Houghton,* 103 Cal. 53 [36 Pac. 1081, that where there is no objection to the pleadings or the sufficiency of the evidence to support the findings, which are full and explicit upon all the material issues, all errors and omissions are cured by verdict, and waived, and cannot be urged upon appeal for the first time.

It was held in *Doble* v. *Keystone Consolidated Co.,* 145 Cal. 490, at 495 [78 Pac. 1050], that "It is unfair for a party to withhold an objection founded upon a defect which if pointed out in time might be remedied, until too late to correct the defect, thereby inducing an opponent to rely upon his pleading as sufficient in order that he may have a fatal objection. Such a course is a fraud upon justice and prevents a fair trial. It is therefore not tolerated." (Citing cases.)

The objections to the notices were waived by failure of appellants to reach the point by special demurrer to the amended complaint, by admitting in their answer the truth of the allegations of the amended complaint in relation to the contents of the notices, and by presenting their objections on appeal for the first time.

The judgment is modified by disallowing and striking out the amount of $192.70 interest, reducing the amount of plaintiff's judgment to $6,000, and the attorney's fees, and as so modified the judgment is affirmed.

Works, P. J., and Craig, J., concurred.

A petition by appellants for a rehearing of this cause was denied by the district court of appeal on January 20, 1928, and the following opinion then rendered thereon:

THE COURT.—In their petition for a rehearing herein defendants (appellants) Walter J. Lewis and Annie Lewis complain that the opinion of this court is based sub-

stantially upon defaults of defendants in the payments of rents, thus leaving room for the operation of section 174 of the Code of Civil Procedure, giving them five days after judgment within which to pay the unpaid rents and reinstate the lease. Defendants also contend that the findings and judgment of the trial court in terminating the lease for violation of its covenants binding defendants to keep the demised premises in good order and condition, reasonable use excepted, to make no alterations or changes therein without the written consent of the lessors, to keep the premises as fully and well furnished as when leased, and to make the necessary restorations and replacements and to keep it so furnished, constituted prejudicial error.

In regard to those findings and the facts upon which they were based, this court said: ''The findings are supported by substantial evidence.''

The lease provides that the lessors shall have a first lien on the furnishings to secure the rents and certain other covenants of the lease, and that ''should any of the rents herein provided for be due and unpaid . . . or should the lessee be in default in any other condition or covenant of this lease, the lessors may at their option and upon ten (10) days written notice . . . re-enter and take possession of the premises and remove all persons therefrom, . . . and . . . terminate this lease.''

The testimony quoted in the briefs of the parties, and reported in the transcript of the evidence, satisfactorily shows that each of the covenants herein mentioned was violated by the defendants, and that each of the findings relating to those matters had substantial support.

 The notice to terminate the tenancy recited that certain alterations had been made by defendants in the leased premises without the consent of the lessors, that the premises had not been kept as fully and well furnished as at the date of the lease, and other defaults which need not be mentioned here, and demanded that each of the defaults be remedied within ten days or the lease would be forfeited and possession of the premises retaken by plaintiff.

The three days' notice to quit referred to the ten days' notice, recited the defaults mentioned in that notice and that none of them had been cured, and demanded that they

be cured within three days or possession be given or legal proceedings would be instituted for possession.

One who seeks the summary remedy allowed by the statute must bring himself clearly within its terms (*Harris* v. *Bissell,* 54 Cal. App. 307, 313 [204 Pac. 453] ; *Opera House Assn.* v. *Bert,* 52 Cal. 471; *Iburg* v. *Fitch,* 57 Cal. 192) ; but where, as in this case, the breaches are shown and proper notices of forfeiture given, the court is authorized to grant the relief prayed for (sec. 1161, subd. 3, Code Civ. Proc.; *Pfitzer* v. *Candeias,* 53 Cal. App. 737 [200 Pac. 839]).

The finding of the lower court to the effect that defendants failed to keep the premises in repair, if erroneous for the reason that the notices made no mention of such default, was not prejudicial to the rights of defendants. The failure of defendants to fulfill the other covenants not to alter the premises without consent and to keep the premises furnished are sufficient to sustain the judgment terminating the lease with no right of reinstatement.

Petition for rehearing is denied.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 23, 1928.

All the Justices present concurred.